UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LUIS R. MORALES, A34-200-190,

        Petitioner,

    -v-                                                      13-CV-1089-JTC

ERIC H. HOLDER, Jr., U.S. Attorney General,

TODD TRYON, Assistant Field Office Director
U.S. Immigration and Customs Enforcement,

MICHAEL T. PHILLIPS, Field Office Director,

        Respondents.

---

## **INTRODUCTION**

Petitioner Luis R. Morales, an alien in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention at the Buffalo Federal Detention Facility in Batavia, New York, pending the execution of an immigration order of removal issued against him.  Item 1.  As directed by this court's order entered November 19, 2013 (Item 3), respondent[1] has submitted an answer and return (Item 7), along with an accompanying memorandum of law (Item 8), in opposition to the petition, and petitioner has submitted a reply (Item 9).  For the reasons that follow, the petition is denied.

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner, a native and citizen of Dominican Republic, was admitted to the United States at San Juan, Puerto Rico, on or about November 18, 1975, as a lawful permanent resident. *See* Item 7-2 (Exh. A attached to Declaration of DHS Deportation Officer Juanita Payan (Item 7-1)), pp. 2, 30. Petitioner has been convicted of the following criminal offenses while present in the United States:

  a. On or about March 31, 1980, petitioner was convicted in the Bronx County Criminal Court, Bronx, New York, of Criminal Mischief in the 2nd Degree. He was adjudicated youthful offender status.

  b. On or about February 20, 1981, petitioner was convicted in the Bronx County Supreme Court, Bronx, New York, of Attempted Burglary in the 3rd Degree. He was sentenced to a 1 year term of incarceration.

  c. On or about February 1, 1983, petitioner was convicted in the Bronx County Criminal Court, Bronx, New York, of Criminal Mischief in the 4th Degree. He was sentenced to a 60 day term of incarceration.

  d. On or about November 5, 1983, petitioner was convicted in the New York County Supreme Court, New York, New York, of Attempted Grand Larceny in the 3rd Degree. He was sentenced to an 18 month to 3 year term of incarceration.

  e. On or about April 8, 1988, petitioner was convicted in the Bronx County Criminal Court, Bronx, New York, of Disorderly Conduct, to wit: fighting and violent behavior. He was sentenced to a term of incarceration of 10 days.

  f. On or about May 17, 1995, petitioner was convicted in the Queens County Supreme Court, Kew Garden, New York, of Burglary in the 1st Degree, Robbery in the 1st Degree (2 counts), and Attempted Murder in the 2nd Degree (4 counts). For these offenses he was sentenced to a term of incarceration of 150 months to 25 years. Additionally, petitioner was convicted of Criminal Possession of a Weapon in the 2nd Degree for which he was sentenced to a term of incarceration of 90 months to 15 years. Petitioner was also convicted of Tampering with a Witness in the 3rd Degree for which he was sentenced to a term of incarceration of 2 to 4 years.

*Id.*. at 2-3, 29.

On June 7, 1995, petitioner was encountered by agents from the former Immigration and Naturalization Service ("INS") at the Green Haven Correctional Facility in Stormville, New York.  Petitioner was interviewed regarding his immigration status and identified as an alien amenable to removal from the United States.  *Id.* at 3.

On March 21, 2000, petitioner was placed in immigration removal proceedings by service of a Notice to Appear ("NTA") which charged him, pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), with being subject to removal from the United States as an alien who has been convicted of an aggravated felony, and pursuant to INA § 237(a)(2)(C) (8 U.S.C. § 1227(a)(2)(C)), as an alien having been convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, in violation of any law, any weapon, part or accessory which is a firearm or destructive device as defined in 18 U.S.C. § 921(a).  *Id.* at 3, 27-30.

On September 28, 2000, an Immigration Judge ("IJ") denied petitioner's applications for relief from removal and ordered petitioner removed to the Dominican Republic.  *Id.* at 3, 26. Petitioner filed a motion to reconsider, which was denied by the IJ on January 11, 2001.  *Id.* at 3.  Petitioner appealed the IJ's decision of January 11, 2001 to the Board of Immigration Appeals ("BIA"), *id.*, and on April 10, 2001, the BIA dismissed petitioner's appeal.  *Id.* at 23-25.  Petitioner filed a motion to reconsider, which the BIA denied as untimely on July 12, 2001. *Id.* at 3, 21-22.

On August 13, 2001, while he was in the custody of the New York State Department of Correctional Services ("DOCS"; reorganized in 2011 and renamed the Department of Corrections and Community Supervision ("DOCCS")), petitioner filed in the United States District Court for the Eastern District of New York a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  *See* Item 7-3, pp. 16-19 (Docket Sheet, *Morales v. Immigration and Naturalization Service*, Civ. No. 01-CV-5507 (E.D.N.Y.)).  The Eastern District court dismissed that petition on March 27, 2002.  *Id.* at 17.  Petitioner filed a motion for reconsideration, and on May 28, 2002, the district court denied the motion and transferred the matter to the United States Court of Appeals for the Second Circuit for consideration as a petition for review of the BIA's ruling.  *Id.* at 18; *see also* Item 7-1, ¶ 12.

On March 28, 2003, the Second Circuit Court entered an order denying petitioner's citizenship claim and dismissing his petition for review.  *See* Item 7-3, p. 13 (Second Circuit Docket Sheet, *Morales v. INS*, No. 02-4194).  The record further reflects that the circuit court construed petitioner's previous district court motion for reconsideration as a timely notice of appeal from the dismissal of the § 2241 habeas petition, and later dismissed the appeal by order dated June 16, 2005.  *See* Item 7-1, ¶ 13.

Petitioner filed several other requests for reconsideration and review by the federal courts, including a petition for a writ of certiorari in the Supreme Court of the United States, which the Court denied on October 4, 2004.  *See* Item 7-3, p. 52 (U.S. Supreme Court Docket Sheet, *Morales v. INS*, No. 04-5341); *see also* Item 7-1, ¶¶ 14-15.  He also filed a series of requests for reopening or reconsideration with the BIA, and on April 1, 2011, filed a petition with the Second Circuit for review of the BIA's denials of these requests.  *See*

Item 7-2, pp. 34-38 (Second Circuit Docket Sheet, *Morales-Santana v. Holder*, No. 11-1252). On March 22, 2013, the Second Circuit granted petitioner's motion for a stay of removal (*see* Item 7-2, p. 43), and on July 16, 2013, the circuit court transferred the matter to this court for a hearing to determine whether petitioner's father would satisfy the one-year continuous presence requirement of 8 U.S.C. § 1409(c) for nationality and citizenship purposes, should the continuous presence requirement be found applicable to petitioner's case. *See id.* at 37; *see also* Item 7-1, ¶¶ 19, 23. On October 24, 2013, Hon. Richard J. Arcara entered a joint stipulation and order resolving the questions pending before the district court and transferring the matter back to the circuit court for resolution of the questions presented in the petition for review. *See* Item 7-2, p. 46 (Docket Sheet, *Morales-Santana v. Holder*, 13-CV-755-A (W.D.N.Y.)). As of the date of entry of this decision and order, the petition for review remains pending with the Second Circuit, and the circuit court's stay of removal remains in effect. *See* Item 7-2, pp. 34-38 (Second Circuit Docket Sheet, *Morales-Santana v. Holder*, No. 11-1252); *see also* Item 7-1, ¶ 25.

Meanwhile, on May 10, 2013, upon his release from the custody of DOCCS, petitioner was taken into DHS custody pursuant to a Warrant of Removal dated May 6, 2013. *See* Item 7-2, pp. 1, 4; Item 7-1. ¶ 20. On June 6, 2013, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. The warning form advised petitioner, among other things, of penalties under INA § 243 for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that,

pursuant to INA § 241(a)(1)(C), a failure to comply or provide sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention. Item 7-2, pp. 7-9.

In accordance with immigration regulations (*see* 8 C.F.R. § 241.4), DHS reviewed petitioner's custody status in July 2013, and on July 29, 2013, petitioner was notified that, based upon the totality of information available in petitioner's case—including his extensive criminal history, failures to appear for criminal proceedings, record of poor institutional behavior, and lack of community sponsorship—he would be a threat to the community and a flight risk if he were to be released from DHS custody. *See* Item 7-2, pp. 2-6.

Petitioner filed this action on November 4, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in DHS custody since May 10, 2013, is unlawful since it "violates (1) the principles of the stay of removal order, … (2) the statutory framework of § 1231(a)(1)(B(ii), and (3) the Due Process Clause of the Fifth Amendment of the U.S. Constitution." Item 1, pp. 4-5. Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (petition under § 2241

is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA—respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  INA § 236 provides, in pertinent parts, as follows:

> (a)   Arrest, detention, and release.
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States ….  Except as provided in subsection(c) … and pending such decision, the Attorney General–
>
> > (1) may continue to detain the arrested alien; and
> > (2) may release the alien on–
> >   (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by the Attorney General; or
> >     (B) conditional parole. . . .
> …
> (c)   Detention of criminal aliens.
>
> > (1) Custody
> > The Attorney General shall take into custody any alien who–
> > …
> >   (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,[2]
> >   …

---

[2] As applicable here, section 1227(a)(2)(A)(iii) states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(a)(1)-(2) and (c)(1).

Once the decision on removability is made by the IJ, and the IJ's removal order becomes final, the authority to detain the alien is provided under INA § 241(a), which requires the Attorney General to accomplish removal within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of certain criminal aliens—like petitioner—who have been ordered removed due to conviction of an enumerated crime, or determined to be a threat to the community or risk of flight, beyond the expiration of the ninety-day removal period.  *See* INA § 241(a)(6).[3]

---

[3] INA § 241(a)(6) provides in full as follows:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

As discussed by the Second Circuit in *Wang v. Ashcroft*, the determination of when an alien becomes subject to detention under INA § 241 rather than INA § 236 is governed by INA § 241(a)(1). *Wang*, 320 F.3d at 147.

> Pursuant to § 241(a)(1)(B)(ii), "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien [pending review]," then the removal period begins on "the date of the court's final order." Accordingly, where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the court renders its decision.

*Id.*

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling the INA's apparent authorization of indefinite post-removal order detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has

---

8 U.S.C. § 1231(a)(6).

been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

By contrast, no such time limitation has been applied to the detention of criminal aliens under INA § 236(c), since the detention has "a definite termination point"—*i.e.*, upon completion of the administrative removal proceedings and the issuance of a final order of removal. *Demore v. Kim*, 538 U.S. 510, 529 (2003) (upholding constitutionality of mandatory detention of criminal aliens under INA § 236(c)). In both *Demore* and *Zadvydas*, the Supreme Court discussed and distinguished the different purposes of pre- and post-removal order detention, emphasizing the material difference between the potentially indefinite post-removal period detention under INA § 241(a)(6), and the definite duration of pre-final order detention under INA § 236(c). *See Demore*, 538 U.S. at 526-529; *Zadvydas*, 533 U.S. at 690-91, 697.

As outlined above, in this case petitioner's removal order was issued by the IJ in January 2001, and the order became "administratively final" in April 2001 upon the BIA's dismissal of the appeal. *See* 8 C.F.R. § 1241.1(a) (IJ's order of removal "shall become final … [u]pon dismissal of an appeal by the Board of Immigration Appeals."). At that time, petitioner was in DOCCS' custody serving sentences imposed in May 1995 upon criminal convictions for burglary, robbery, attempted murder, criminal possession of a weapon, and witness tampering. Prior to his being released from DOCCS' custody and received into DHS custody in May 2013, petitioner filed a series of petitions with the Second Circuit challenging the administrative order of removal and the BIA's denials of his several motions to reconsider or reopen his removal proceedings. In one of those proceedings,

*Morales-Santana v. Holder*, Second Circuit Docket No. 11-1252 (filed in April, 2011), petitioner challenged the BIA's denial of a motion to reopen, and on March 22, 2013, the circuit court granted petitioner's motion for stay of removal.

As a result of that stay order, petitioner's detention is authorized pursuant to INA § 236, and his continued detention in DHS custody pending the Second Circuit's ruling on his petition for review is in accordance with controlling Second Circuit law. *See Wang*, 320 F.3d at 147 ("[W]here a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the court renders its decision."). Furthermore, as a result of the circuit court's stay of removal, the ninety-day statutory removal period described in INA § 241 has not commenced, and will not commence until the circuit court issues a final order on the pending petition for review and lifts the stay. *See id.*; *see also* INA § 241(a)(1)(B)(ii) (if removal order is judicially reviewed and court orders a stay of removal, removal order becomes final on the date of court's final order).

Moreover, because petitioner's removal has been delayed by his own actions in pursuit of relief in the federal courts, neither his detention pending the circuit court's final ruling, nor its duration, can be found to constitute a violation of petitioner's rights under the due process clause of the Fifth Amendment. *See Flores v. Holder*, ___F. Supp. 2d___, ___, 2013 WL 2468735, at *5 (W.D.N.Y. June 7, 2013) (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that his eight-year detention violates substantive due process); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four-year detention)).

There is likewise no merit to petitioner's contention that DHS was not authorized to detain him following the circuit court's grant of his request for a stay of removal. As discussed above, INA § 236(a) authorizes the arrest of an alien on a warrant and detention pending a decision on removability, and § 236(c) not only provides for mandatory detention of criminal aliens—such as petitioner—who have been convicted of serious and violent aggravated felony offenses, but also mandates that criminal aliens be taken into custody "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offences." 8 U.S.C. § 1226(c). Unless and until the circuit court vacates the removal order or otherwise rules in petitioner's favor on the petition for review, petitioner remains a criminal alien subject to removal and subject to lawful mandatory detention in DHS custody under the authority of the INA.

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to

appeal as a poor person should be denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).

      The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

      So ordered.

\s\ John T. Curtin<br>
JOHN T. CURTIN<br>
United States District Judge

Dated:   March 19, 2014
p:\pending\2013\13-1089.2241.mar10.2014